**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                               :
ABDUS SHAHID ALI,              :
                               :          Civil No. 05-3205 (FLW)
           Petitioner,         :
                               :
        v.                     :
                               :          **O P I N I O N**
JOHN NASH, WARDEN,             :
                               :
           Respondent.         :
_____:

**APPEARANCES:**

        ABDUS SHAHID ALI, Petitioner pro se
        #08619-000
        F.C.I. Fort Dix
        P.O. Box 2000
        Fort Dix, New Jersey 08640

        IRENE E. DOWDY, ESQ.
        United States Attorney's Office
        402 East State Street, Suite 430
        Trenton, New Jersey 08608
        Counsel for Respondent

**WOLFSON, District Judge**

        This matter is before the Court on petitioner Abdus Shahid
Ali's ("Ali") application for habeas corpus relief under 28
U.S.C. § 2241, challenging a disciplinary proceeding at FCI Fort
Dix in which sanctions were imposed resulting in, among other
things, the loss of good conduct time.  Ali asserts that he was
denied due process and seeks restoration of his good conduct time
and expungement of the incident report from his record.

The Government filed an answer to the petition on or about November 18, 2005, with a copy of the relevant record for review. Ali submitted a written objection to the respondent's answer on December 2, 2005.  The Court has reviewed all documents submitted and, for reasons now discussed, will deny this petition for lack of merit.

<u>BACKGROUND</u>

Ali is presently confined at FCI Fort Dix.  He was sentenced in the United States District Court for the Eastern District of Virginia to a 148 month prison term with five years supervised release for a drug trafficking conviction.  His projected release date is November 28, 2010.  (Declaration of Roberta M. Truman, Assistant Regional Counsel, dated November 2, 2005 ("Truman Decl."), at ¶ 3).

On October 5, 2004, FCI Fort Dix correctional officers conducted a mass search of the housing unit where Ali was assigned.  Officer Robert Sims searched Ali's unit and found an altered piece of metal with a sharpened point and string wrapped around the end section.  The object was about 9½ inches long and was concealed under the lip of Ali's secured wall locker. Officer Sims wrote an incident report that same day charging Ali with possession, manufacture or introduction of a hazardous tool, in violation of Prohibited Act Code 108.  <u>See</u> 28 C.F.R. § 541.13

Table 3.  (Truman Decl., ¶ 4, Exhibit A - Incident Report No. 1268659).

On October 5, 2004, Lt. C. Fields conducted an investigation of the incident report.  He met with Ali, gave Ali a copy of the incident report, and advised Ali of his rights.  Ali denied the charge, saying that he did not know the object was in his locker. The incident report shows that Ali did not request any witnesses during the investigation.  Lt. Fields concluded that the incident report was true, placed Ali in administrative detention, and referred the matter to the Unit Disciplinary Committee ("UDC"). Truman Decl. at Ex. A, boxes 14-16, 22-27).

The UDC conducted an initial hearing on October 7, 2004. At that hearing, Ali testified that he had just returned to FCI Fort Dix from a writ of habeas corpus ad prosequendum or ad testificandum two weeks earlier and received his locker at that time.  Ali claimed that the locker does not lock and that the object was not his.  He stated: "It must have already been in there, I've been down 15 years, I wouldn't have a knife." (Truman Decl., Ex. A at box 17).  The UDC referred the matter to the Disciplinary Hearing Officer ("DHO") for further proceedings because the alleged violation was serious and warranted consideration of sanctions greater than that which the UDC could impose pursuant to 28 C.F.R. § 541.15(h).  (Truman Decl., Ex. A at boxes 18-21).

3

At the UDC hearing on October 7, 2004, Ali was advised of his rights, and was given a written statement of his rights at the hearing.  Ali also signed an acknowledgment of his rights before the DHO.  Specifically, Ali was informed that he could have a staff representative, and that he could call witnesses and present documentary evidence at the DHO hearing.  (Truman Decl., Exs. B and C).  At that time, Ali requested Counselor J. Williams as his staff representative, and Unit Officer Reynolds and Property officer Bonds as witnesses to testify that Ali's lock was broken.  (Id., at Ex. C).

The DHO conducted a hearing on October 20, 2004.  The administrative record shows that Counselor Williams acted as Ali's staff representative.  In fact, Williams had signed a memorandum on the day of the hearing that set forth the duties of a staff representative.  (Truman Decl., Ex. D).  At the hearing, Williams reported that he had met with Ali and discussed the incident with him.  Ali also stated that Williams had fulfilled his duties to him as a staff representative.  (Truman Decl., Ex. F at Parts II and III).

Ali submitted a written statement at the DHO hearing.  The statement contended that Officer Sims had not documented the locker in which the homemade knife was found.  Ali claimed that he had been the last inmate to move into the unit and "got the left over stripped locker with a different bed number on it. ...

4

I truly believe and know he [Officer Sims] got the shank out of somebody's elses [sic] locker which had 6 upper on it."  (Truman Decl., Ex. E).

Ali also made an oral statement before the DHO in which he claimed no knowledge of the knife in his locker.  He stated that he had the locker for two weeks before the knife was found, and that the tip of the knife had rust and dust on it, suggesting that it was in the locker longer than two weeks.  Ali further stated that he ran upstairs to get his clothes before the housing unit search, and therefore had enough time to discard the knife if it was his.  Finally, Ali said that Officer Sims had to have made a mistake because Sims reported that the locker in which he found the knife was secured.  Ali's lock was broken so he could not have secured his locker.  When the DHO asked Ali what he did with his mail or letters, Ali responded that for those letters or mail he kept, he put them in his locker.  (Truman Decl., Ex. F, Part III § B).

Officer Sims testified at the hearing and explained to the DHO that he had identified Ali's locker by the mail and labeled medications inside, which bore Ali's name and registration number.  Officer Sims also stated that the locker was secured when he searched it.  (Id., Ex. F, Part III § C.2).

The two officers (Officers Bond and Reynolds) that Ali requested as witnesses at the DHO hearing were not called to

testify.  The DHO determined that they did not have first hand knowledge of the incident.  The DHO further found that Ali's testimony about the broken lock was not relevant because an inmate may possess more than one lock or could borrow a lock from another inmate.  (<u>Id</u>., Ex. F, Part III § C.3).

The DHO concluded that, based on the greater weight of the evidence presented, Ali had committed the prohibited act of possessing a sharpened instrument, in violation of Code 104, rather than Code 108.  The DHO found that Code 104 was the more appropriate charge based on the specific evidence at the hearing, namely, that the object found was a 9½ inches long, sharpened piece of metal resembling an ice pick with a self-formed handle and string.  The Code violation carried the same range of penalties as the initial Code 108 charge because both charges were in the 100 Series Code violations.  The DHO also determined that the knife belonged to Ali based on Officer Sims' testimony that he found the item in a locker containing Ali's mail and medication.  The DHO did not credit the written and oral statements made by Ali as to his innocence.  In particular, the DHO noted that under Program Statement 5270.07, Inmate Discipline and Housing Unit, inmates have the responsibility to keep their assigned areas free of contraband.  Two weeks was sufficient time for Ali to ensure that his locker was contraband free.  (<u>Id</u>., Ex. F, Parts IV, V).

The DHO imposed the following sanctions on Ali: 60 days disciplinary segregation; loss of 40 days good conduct time; forfeit of 243 days non-vested good conduct time, and a recommended disciplinary transfer.  These sanctions were within the range sanctioned for 100 Series Code violations, so as to impress the seriousness of the offense charged.  The DHO found that Ali's possession of a sharpened metal weapon demonstrated a disregard of established rules and regulations as well as the safety of others.  The DHO recommended a transfer because Ali's charge has shown the need for greater security than provided at FCI Fort Dix.  (Id., Ex. F, Parts VI, VII).

There is no dispute that Ali has exhausted all of his administrative remedies before filing this action.

## II.  CLAIMS PRESENTED

In his petition, Ali asserts that his right to due process was violated because (1) he was denied a staff representative; (2) he was denied the right to call witnesses; (3) he was denied the right to testify at the disciplinary hearing; (4) the DHO was not an impartial fact-finder; and (5) the DHO's decision was not supported by substantial evidence.

## III.  DISCUSSION

### A.  Standard of Review

Ali seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3).  That section states that the writ will not be

extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

B.   Applicable Regulations

The Bureau of Prisons ("BOP") has specific guidelines for inmate disciplinary procedures, which are codified at 28 C.F.R. § 541.10 et seq.  Prohibited acts are categorized according to the severity of the conduct.  Code Level 100s are deemed the "Greatest", code level 200s as "High", and proceeding to 400 level codes as "Low Moderate."  The Prohibited Acts Code and Disciplinary Severity Scale is set forth at 28 C.F.R. § 541.13 Tables 3-5.  Incident reports are prepared in accordance with § 541.14 and are referred to the UDC for an initial hearing pursuant to § 541.15.

The UDC hearing is typically conducted within three working days of the incident, but may be extended for good cause pursuant to § 541.15(b) and (k).  The UDC may refer the matter to the DHO for further proceedings pursuant to § 541.15(f).  In this case, referral of the incident report to the DHO was mandatory under § 541.13(a)(2), because it was designated as a Code Level 100 category offense and the UDC does not have the authority to disallow good conduct time.  Disallowance of good conduct time credits for greatest and high category offenses, pursuant to Sanction B.1 in Table 3, must be imposed under 28 C.F.R. § 541.13(a)(2).

DHO hearing procedures are set forth at § 541.17.  These procedures require the following: (a) 24-hour advance written notice of charge before inmate's initial appearance before the DHO; this right may be waived, § 541.17(a); (b) an inmate shall be provided a staff representative at the DHO hearing, if so desired, § 541.17(b); (c) an inmate is entitled to make a statement and to present documentary evidence at the DHO hearing; the inmate may also call witnesses to testify on his behalf, but may not himself question the witnesses, § 541.17(c); (d) the inmate is entitled to be present throughout the hearing, except during a period of deliberation or when institutional security would be jeopardized, § 541.17(d).  The DHO shall prepare a record of the proceedings that documents the advisement of the

inmate's rights, the DHO's findings, the DHO's decision, the specific evidence relied upon by the DHO, and a brief statement of the reasons for imposition of sanctions.  28 C.F.R. § 541.17(g).  A written copy of the DHO's decision and disposition must be provided to the inmate ordinarily within 10 days.  Id.

These procedures are intended to meet or exceed the due process requirements prescribed by Wolff v. McDonnell, 418 U.S. 539 (1974).  See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994).

D.  Merits of Petitioner's Claims

1.  *Petitioner Was Afforded Procedural Due Process*

The Due Process Clause of the Fifth or Fourteenth Amendments provides that liberty interests of a constitutional dimension may not be rescinded without certain procedural protections.  U.S. Const. amend. XIV.  In Wolff v. McDonnell, supra, the Supreme Court set forth the requirements of due process in prison disciplinary hearings.  An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals."  Wolff,

418 U.S. at 563-71.  An inmate is also entitled to an inmate representative in some cases, and a written decision by the factfinder as to evidence relied upon and findings.  See Von Kahl, 855 F. Supp. at 1418 (citing Wolff, 418 U.S. at 563-72). As noted by this Court above, the federal regulations for prison disciplinary matters entitle an inmate to a staff representative, the right to give testimony and present documentary evidence, and the ability to call witnesses but not to question the witnesses.

In this case, the record shows that all of Ali's claims alleging denial of due process are without merit.  First, Ali was allowed a staff representative.  His requested staff representative, Counselor Williams appeared for Ali and the record shows no disapproval by Ali or the respondents in Counselor Williams' representation of petitioner.

Second, Ali submitted a written statement at his hearing and also gave oral testimony.  Thus, he was not deprived of the opportunity to be heard on the charges, as alleged.  Finally, while Ali requested the presence of two witnesses who could verify that Ali's lock was broken, but the DHO declined to call these witnesses, it is evident that the issue of a broken lock was not relevant to the DHO's decision that the knife was in fact possessed by Ali since it was found in his locker and Ali had the responsibility to keep his assigned areas free of contraband. Thus, the DHO considered the proffer of Ali's witnesses but found

that their testimony would have been irrelevant.  Because Ali is not entitled to question witnesses himself, there was no denial of due process in this instance.  See Wolff, supra; 28 C.F.R. § 541.17(c).

Thus, this Court finds no violations of the procedural due process requirements in this case, and concludes that Ali was afforded all the process to which he was due in his disciplinary proceedings.  Consequently, these claims are denied for lack of substantive merit.

2. *There Was Sufficient Evidence to Support the Charge*

The Supreme Court has held that procedural due process is not satisfied "unless the findings of the prison disciplinary board are supported by some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454-55 (1985); Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991).  The Supreme Court has stated:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances.  The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.

Hill, 472 U.S. at 456 (internal citations omitted).  Moreover, the Court stated:  "The Federal Constitution does not require

12

evidence that logically precludes any conclusion but the one reached by the disciplinary board.  Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing."  Id. at 457.

Here, there is sufficient evidence noted by the DHO in reaching his determination.[1]  First, the DHO had a photocopy of the object found, showing it to be a sharpened piece of metal 9½ inches long concealed under the lip of a locker identified as Ali's because of the letters and medications also inside the locker, bearing Ali's name and registration number.  Second, the DHO considered Ali's version of the incident and protestations of innocence and found them not to be credible.  The DHO also concluded that Ali had the responsibility to keep his assigned areas free of contraband, and two weeks was sufficient time for Ali to ensure that his locker did not contain any contraband.  Thus, the DHO's report plainly shows that it was "not so devoid of evidence that the findings of the [DHO were] without support or otherwise arbitrary."  Hill, 472 U.S. at 457.

Therefore, based upon this evidence as relied upon by the DHO, and without any relevant contradictory evidence submitted by petitioner, except his self-serving denial of knowledge of the knife in his locker, the Court finds that Ali's right to due

---

[1]  There is no requirement that the evidence be "substantial" as suggested by petitioner.

process was not violated by the determination of the DHO.[2]  The procedures enunciated in Wolff, supra, were complied with, and there was "some evidence", in accordance with Hill, supra, to support the DHO's finding of guilt.  See Sinde v. Gerlinski, 252 F. Supp.2d 144, 150 (M.D. Pa. 2003)("If there is 'some evidence' to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff")(quoting Hill, 472 U.S. at 457).

3.  *The DHO Was an Impartial Fact-Finder*

Last, Ali asserts that the DHO was not an impartial fact finder because he amended the charge from a Code 108 violation to a Code 104 violation without sufficient reason to do so.

A prisoner is entitled to an impartial disciplinary tribunal, Wolff, 418 U.S. at 570-71, excluding "only those [prison] officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body." Meyers v. Alldredge, 492 F.2d 296, 306 (3d Cir. 1974).  Here, the DHO was not involved in the investigation or circumstances underlying the charge.  Rather, he simply revised the disciplinary charge from a Code 108 violation to a Code 104 violation because the latter

---

[2]  Further, the sanctions imposed were consistent with the severity level of the prohibited act.  They were within the maximum authorized under BOP regulations for Ali's charged offense, and were not disproportionate to Ali's charged misconduct.  See 28 U.S.C. § 541.13, Tables 3 and 4.

charge was more applicable to the item found in Ali's locker.
This revision did not require a new investigation or new or
different evidence at the disciplinary proceeding.  Moreover, the
violation carried the same range of penalties and did not impose
harsher sanctions than permitted under the Code.

Thus, Ali has not demonstrated any facts to support the
allegation that the DHO was biased.  Nor does Ali cite any
authority for his allegation that the DHO did not have the power
to designate the offense as a Code 104 violation from a Code 108
violation.  Accordingly, the Court concludes that Ali's claim
about the impartiality or bias of the DHO to be baseless, and
there is nothing in the record to support Ali's general
contention that the DHO was not fair or impartial, or abused his
authority during the disciplinary proceedings.  Therefore, this
claim is denied.

## CONCLUSION

Based upon the foregoing, Ali's petition for a writ of
habeas corpus, pursuant to 28 U.S.C. § 2241, will be denied for
lack of substantive merit.  An appropriate Order accompanies this
Opinion.


s/Freda L. Wolfson
FREDA L. WOLFSON
United States District Judge


Dated: April 11, 2006

15